UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA G.,<br><br>                          Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security,<br><br>                          Defendant. | Case No.:  20cv1557-RBB<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 15]** |

On August 11, 2020, Plaintiff Teresa G.[1] commenced this action against Defendant Andrew Saul, Commissioner of Social Security, for judicial review under 42 U.S.C. § 405(g) of a final adverse decision for disability insurance benefits [ECF No. 1].[2]  On August 24, 2020, Plaintiff consented to have a United States Magistrate Judge conduct all

---

[1] The Court refers to Plaintiff using only her first name and last initial pursuant to the Court's Civil Local Rules.  See S.D. Cal. Civ. R. 7.1(e)(6)(b).
[2] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

1

proceedings in this case [ECF No. 7].³  Defendant filed the Administrative Record on February 18, 2021 [ECF No. 11].  On April 19, 2021, Plaintiff filed a Motion for Summary Judgment [ECF No. 15].  The case was transferred to this Court on June 9, 2021 [ECF No. 18].  Defendant filed an Opposition to Plaintiff's Motion for Summary Judgment on June 11, 2021 [ECF No. 19].  Plaintiff's Reply in Support of Motion for Summary Judgment was filed on June 24, 2021 [ECF No. 20].

For the following reasons, Plaintiff's Motion for Summary Judgment is **DENIED**.

## I.   BACKGROUND

Plaintiff Teresa G. was born in 1959 and completed eighth grade.  (Admin. R. 151, 156, ECF No. 11.)⁴  She previously worked as a caregiver, housekeeper, janitor, and manufacturing/small parts assembler.  (Id. at 156.)  On September 12, 2017, Teresa G. filed an application for disability insurance benefits under Title II of the Social Security Act.  (Id. at 114-17.)  She alleged that she had been disabled since August 18, 2017, due to diabetes, thyroidism, asthma, high blood pressure, panic attacks, depression, anxiety, chronic body pain, and back pain.  (Id. at 155.)  Plaintiff's application was denied on initial review and again on reconsideration.  (Id. at 95-98, 100-04.)  An administrative hearing was conducted on April 4, 2019, by Administrative Law Judge ("ALJ") Louis M. Catanese, at which Plaintiff testified with the assistance of a Spanish interpreter.  (Id. at 38, 40.)  On May 9, 2019, the ALJ issued a decision and concluded that Teresa G. was not disabled.  (Id. at 21-34.)  Plaintiff requested a review of the ALJ's decision; the

---

³ The United States has informed the Court of its general consent to Magistrate Judge jurisdiction in cases of this nature.

⁴ The administrative record is filed on the Court's docket as multiple attachments.  The Court will cite to the administrative record using the page references contained on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF").  For all other documents, the Court cites to the page numbers affixed by CM/ECF.

Appeals Council denied the request on June 22, 2020. (Id. at 1-5.) Plaintiff then commenced this action pursuant to 42 U.S.C. § 405(g).

### A.   ALJ's Decision

In his decision finding that Teresa G. was not disabled, (id. at 21-34), Judge Catanese determined that Plaintiff had not engaged in substantial gainful activity since August 18, 2017, her alleged onset date. (Id. at 23.) He found that Plaintiff had severe impairments including hypertension; diabetes mellitus; obesity; and a mental impairment variously diagnosed to include a depressive disorder, borderline personality disorder, and post-traumatic stress disorder (PTSD). (Id.) He considered the following conditions as nonsevere impairments: asthma, constipation, vertigo, hyperglycemia, glaucoma, foot callus, headache, sinusitis, nose bleeds, back pain, and thyroid condition. (Id. at 24.) The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Id.) He stated that Teresa G. had the residual functional capacity to perform no greater than light work with additional specified limitations.

> [Plaintiff] could also sustain attention and concentration for at least two-hour increments at a time for only unskilled work duties, as would be consistent with an SVP level of 1 to 2 but no greater than 2; could also have no greater than occasional interaction with any coworkers, or supervisors, and/or members of the public; and lastly, would not be expected to respond adequately to frequent changes in workplace environment.

(Id. at 27.) ALJ Catanese concluded that Plaintiff was capable of performing her past relevant work as a cleaner/housekeeper and small parts assembler, and had not been under a disability from August 18, 2017, through the date of his decision. (Id. at 33-34.)

## II.   LEGAL STANDARDS

Sections 405(g) and 421(d) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C.A. §§ 405(g), 421(d) (West 2011). The scope of judicial review is limited,

however, and the denial of benefits "'will be disturbed only if it is not supported by substantial evidence or is based on legal error.'"  Brawner v. Sec'y of Health & Human Servs., 839 F.2d 432, 433 (9th Cir. 1988) (quoting Green v. Heckler, 803 F.2d 528, 529 (9th Cir. 1986)); see also Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014).  Substantial evidence means "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); see also Biestek v. Berryhill, ___U.S. ____, ____, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).  The court must consider the entire record, including the evidence that supports and detracts from the Commissioner's conclusions.  Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988).  If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020).  The district court may affirm, modify, or reverse the Commissioner's decision.  42 U.S.C.A. § 405(g).  The matter may also be remanded to the Social Security Administration for further proceedings.  Id.

      To qualify for disability benefits under the Social Security Act, a claimant must show two things:  (1) The applicant suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more, and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy.  See 42 U.S.C.A. §§ 423(d)(1)(A), (2)(A) (West 2011).  An applicant must meet both requirements to be classified as "disabled."  Id.  The applicant bears the burden of proving he or she was either permanently disabled or subject to a condition which

became so severe as to disable the applicant prior to the date upon which his or her disability insured status expired.  Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

The Commissioner makes this assessment by employing a five-step analysis outlined in 20 C.F.R. § 404.1520.  See also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (describing five steps).  First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."  If so, the claimant is not disabled.  20 C.F.R. § 404.1520(b) (2019).  Second, the Commissioner determines whether the claimant has a "severe impairment or combination of impairments" that significantly limits the claimant's physical or mental ability to do basic work activities.  If not, the claimant is not disabled.  Id. § 404.1520(c).  Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude work; if the claimant's impairment meets or equals one of the listed impairments, benefits are awarded.  Id. § 404.1520(d).  If not, the claimant's residual functional capacity is assessed and the evaluation proceeds to step four.  Id. § 404.1520(e).  Fourth, the Commissioner determines whether the claimant can do his or her past relevant work.  If the claimant can do their past work, benefits are denied.  Id. § 404.1520(f).  If the claimant cannot perform his or her past relevant work, the burden shifts to the Commissioner.  In step five, the Commissioner must establish that the claimant can perform other work.  Id. § 404.1520(g).  If the Commissioner meets this burden and proves that the claimant is able to perform other work that exists in the national economy, benefits are denied.  Id.

When an applicant for disability benefits claims mental impairment, the ALJ must employ the special technique described in 20 C.F.R. § 404.1520a to rate the degree of functional limitation resulting from the impairment.  See 20 C.F.R. § 404.1520a(a), (b)(2) (2017).  A five-point scale (none, mild, moderate, marked, and extreme) is used to rate degree of functional limitation in four broad functional areas:  (1) understand, remember,

or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  Id., § 404.1520a(c)(3)-(4).  After the degree of functional limitation resulting from the impairment is established, the Commissioner will determine, in connection with the five-step analysis described above, the severity of the mental impairment, whether it meets or is equivalent in severity to a listed mental disorder, and residual functional capacity.  Id. § 404.1520a(d)(1)-(3).

### III.   DISCUSSION

Plaintiff asserts that the ALJ impermissibly rejected the opinions of examining physician Jaga Nath Glassman, M.D.  (Pl.'s Mot. Attach. #1 Mem. P. & A. 3-9, ECF No. 15.)  Specifically, Teresa G. contends that Dr. Glassman's examination supported his findings of marked impairments for maintaining concentration, persistence, and pace and for adapting to changes and stresses in a workplace setting, and that the medical record supports the doctor's opinion.  (Id. at 7-8.)  Plaintiff also states that Dr. Glassman's opinion is consistent with the opinions of her treating psychologist, Grace Ning, Psy.D., and state agency psychological consultant, D. Malone, Ph.D.  (Id. at 8.)

### A.   **2017 Revised Regulations**

Plaintiff filed for disability after March 27, 2017.  Therefore, the Social Security Administration's 2017 revised regulations governing the consideration of medical opinions apply.  See 20 C.F.R. § 404.1520 (2017).  Under the updated regulations, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s)[5], including those from [a claimant's] medical sources."  Id. § 404.1520c(a).  Instead, an ALJ is to evaluate medical opinions and prior administrative medical findings by assessing their

---

[5] A "prior administrative medical finding" consists of a finding about a medical issue by a "Federal or State agency medical or psychological consultant[] at a prior level of review."  20 C.F.R. § 404.1513(a)(4).

"persuasiveness." Id.  In determining how "persuasive" a medical source's opinions are, an ALJ must consider the following factors:  supportability, consistency, treatment or examining relationship, specialization, and "other factors." Id. § 404.1520c(c)(1)-(5). The supportability and consistency factors are "the most important factors." Id. § 404.1520c(b)(2).  "Supportability" is the extent to which a medical opinion is supported by relevant objective medical evidence and the medical source's supporting explanations. Id. § 404.1520c(c)(1).  "Consistency" is the extent to which a medical opinion is consistent with evidence from other medical and nonmedical sources.  Id. § 404.1520c(c)(2).[6]

The Ninth Circuit has not yet interpreted the revised regulations because appeals of ALJ decisions applying these regulations have just recently been considered by district courts.  It is clear, however, that the Commissioner's new regulations require the ALJ to explain his or her reasoning and to specifically address how he or she considered the supportability and consistency of the medical opinion.  Id. § 404.1520c(b)(2); see also P.H. v. Saul, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) ("Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'") (citation omitted).  "As always, the ALJ's reasoning must be free of legal error and supported by substantial evidence." See Carolyn M.D. v. Kijakazi, Case No. 2:20-cv-06725-AFM, 2021 WL 6135322, at *5 (C.D. Cal. Dec. 28, 2021) (citing Ford,

---

[6] Under the prior regulations, an ALJ generally accorded controlling weight to a treating physician when the doctor utilized medically approved diagnostic techniques to support the offered opinion, and where the opinion was not inconsistent with other substantial evidence. See 20 C.F.R. § 404.1527(c)(2); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017).  Under the new regulations, a treating source is not entitled to the same presumption, particularly when another medical opinion is more consistent with or better supported by evidence in the record.  20 C.F.R. § 404.1520c(a).

950 F.3d at 1154).  In sum, when considering medical opinions and prior administrative medical findings under the new regulations, the ALJ must explain his or her reasoning, specifically address the supportability and consistency of the opinions, and the ALJ's reasoning must be free from legal error and supported by substantial evidence.  See Martinez V. v. Saul, NO. CV 20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

**B.    ALJ's Evaluation of Dr. Glassman's Opinion**

    **1.    Dr. Glassman's report**

Teresa G. saw Dr. Glassman, a psychiatrist, for a psychiatric disability evaluation on December 27, 2017.  (Admin. R. 300, ECF No. 11.)  His diagnostic impression consisted of major depression, severe; dysthymic disorder; victim, childhood neglect/alcoholic home; and apparent borderline personality features.  (Id. at 303.)  He also provided an opinion regarding Plaintiff's psychiatric limitations.  See 20 C.F.R. § 404.1513(a)(2) (2017) (defining "medical opinion" as a statement from a medical source as to a patient's functional abilities and limitations).  Specifically, he stated:

> [Teresa G.] has a moderate impairment in her capacity to behave in a socially-appropriate manner and to get along adequately with others, given her markedly depressed and dysphoric presentation.  She has mild impairment in her capacity to understand and follow simple instructions.  She has marked impairment in her capacity to maintain concentration, persistence, and pace, and to adapt to changes and stresses in a workplace setting.

(Admin. R. 304, ECF No. 11.)

    **2.    ALJ's finding that Dr. Glassman's opinion was not persuasive**

The ALJ stated the following regarding Dr. Glassman's opinion:

> I find no significant persuasiveness in the overall opinions of consultative examiner Dr. Glassman, who found the claimant had marked impairment for maintaining concentration, persistence, pace and for adapting to changes and stresses in a workplace setting; mild impairment for understanding and

following simple instructions; and moderate impairment for behaving in a socially appropriate manner and getting along with others. [Exhibit reference omitted.] While the moderate impairment in getting along with others has some consistency with the overall evidence and I have made similar findings in this decision, the examiner's findings demonstrate a greater functional level, including reports of coherent, relevant, and goal-directed thought processes; no evidence of any psychotic symptoms; ability to follow all instructions; socially appropriate behavior; and alert with average intellectual functioning. [Exhibit reference omitted.] In particular, these findings do not support marked impairment for maintaining concentration, persistence, pace and for adapting to changes and stresses in a workplace setting; and moderate impairment for behaving in a socially appropriate manner. I note that the consultative examiner wrote that the claimant was socially appropriate without any odd or bizarre behavior. In addition, the examiner's conclusions are not consistent with the frequently unremarkable findings in the overall evidence, as described in the above paragraph regarding Dr. Ning's opinions.

(Id. at 32.)

C.  **"Specific and Legitimate Reasons" Standard No Longer Applicable**

As an initial matter, Plaintiff contends that the ALJ was required to articulate "specific and legitimate reasons" supported by substantial evidence to reject Dr. Glassman's opinion regarding Teresa G.'s psychiatric limitations. (Pl.'s Mot. Attach. #1 Mem. P. & A. 6-7, ECF No. 15.) The "treating source rule" applied in connection with the prior version of the regulations allowed an ALJ to reject a treating or examining physician's uncontradicted medical opinion only for "clear and convincing reasons," and allowed a contradicted opinion to be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. See, e.g., Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017). This measure of deference to a treating or examining physician is no longer applicable under the 2017 revised regulations. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5853) (Jan. 18, 2017) (available at 2017 WL 168819) ("[W]e are not retaining the treating source rule . . .

for claims filed on or after March 27, 2017."); see also Jones v. Saul, No. 2:19-cv-01273 AC, 2021 WL 620475, at *6 (E.D. Cal. Feb. 17, 2021) (finding the revised regulations valid, entitled to deference, and supersede prior Ninth Circuit case authority interpreting the treating physician rule); Allen T. v. Saul, No. EDCV 19-1066-KS, 2020 WL 3510871, at *3 (C.D. Cal. June 29, 2020) ("[T]he Court is mindful that it must defer to the new regulations, even where they conflict with prior judicial precedent, unless the prior judicial construction 'follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.'") (citing Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 981-82 (2005)).  Therefore, any argument set forth by Plaintiff that relies on the alleged failure by the ALJ to articulate specific and legitimate reasons supported by substantial evidence to reject Dr. Glassman's opinion is without merit.

**D.     Analysis**

Plaintiff contends that Dr. Glassman's opinion of her marked impairments was supported by his examination findings.  (Pl.'s Mot. Attach. #1 Mem. P. & A. 7, ECF No. 15.)  Dr. Glassman observed that during the mental status examination, Teresa G. presented with limited eye contact, frequent sobbing, whimpery monotone speech, and appeared very depressed, distraught, overwhelmed, and unable to self-soothe.  (Id., citing Admin. R. 302, ECF No. 11.)  Plaintiff relates that she misidentified the day of the week, incorrectly stated that the sun rises in the west, and misstated the capital of California. (Id.)  She also argues that relevant objective medical evidence in the record supports Dr. Glassman's opinion and cites to treatment notes and mental status examinations reflecting, among other things, depressed mood, tearful and anxious affect, decreased energy, poor coping skills, anxiety, nightmares, and flashbacks.  (Id. at 8.) Finally, she points out that Dr. Glassman's opinion is consistent with the opinions of Dr. Ning, her

treating psychologist, and Dr. Malone, the state agency psychological consultant who evaluated her claim at the initial level of review.  (Id.)

In his evaluation of Dr. Glassman's opinion, the ALJ identified the two primary factors of supportability and consistency set forth in the new regulations and cited evidence to substantiate his conclusion that the opinion was not supported by, or consistent with, the doctor's examination findings or other evidence of Plaintiff's mental condition in the record.  (See Admin. R. 32, ECF No. 11; see also 20 C.F.R. § 404.1520c(b)(2).)  Under the revised regulations, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be."  See 20 C.F.R. § 404.1520c(c)(1) (describing supportability factor).  Here, Dr. Glassman's opinion was based solely on his examination and a self-report questionnaire completed by Plaintiff, and not any other records in Plaintiff's medical file, (see Admin. R. 303, ECF No. 11), and thus his own examination findings were the only objective medical evidence relied on by the doctor.  See id. § 404.1520c(b)(2), (c)(5) (providing that ALJ is to consider a medical source's familiarity with other evidence in the claim but need not explain consideration of this factor).  The ALJ interpreted Dr. Glassman's examination findings as "demonstrating a greater functional level" than the doctor indicated because Teresa G.'s thought processes were coherent, relevant, and goal-directed; she had no evidence of any psychotic symptoms; she was able to follow all instructions; she showed socially appropriate behavior; and she was alert with average intellectual functioning.  (Admin. R. 32, ECF No. 11, citing id. at 303.)  In other words, while Plaintiff exhibited some indication of psychiatric impairment during her examination with Dr. Glassman, other components of her mental exam were normal or supported a lesser degree of impairment than indicated by the doctor.  The existence of an impairment, diagnosis, or symptom does not mean that Plaintiff suffered from a disabling

limitation in her functional abilities, and the ALJ could properly rely on normal exam findings in his evaluation of Dr. Glassman's opinion.  See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (finding discrepancy between doctor's recorded observations and opinions regarding patient's capabilities a valid reason to not rely on the doctor's opinion); see also Trevizo, 871 F.3d at 674-75 ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."); Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted) (noting that if the evidence could reasonably support either affirming or reversing the ALJ's decision, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision).

Plaintiff recognizes that portions of Dr. Glassman's mental status examination were unremarkable but argues that the majority of the examination was abnormal.  (Pl.'s Reply 4, ECF No. 20.)  She relies on Buck v. Berryhill, 869 F.3d 1040 (9th Cir. 2017), to argue that Dr. Glassman's mental status examination constituted objective medical evidence and that the ALJ was not permitted to reject it "because of the relative imprecision of the psychiatric methodology."  (Pl.'s Reply 4-5, ECF No. 20, citing Blankenship v. Bowen, 874 F.2d 1116, 1121 (6th Cir. 1989).)  In Buck, the Ninth Circuit held that the ALJ could not reject an examining psychologist's opinion on the basis that the opinion relied in part on the plaintiff's self-report.  Buck, 869 F.3d at 1049.  The court observed that psychiatric diagnoses "will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient" and that "[s]uch is the nature of psychiatry."  Id.  Unlike the ALJ in Buck, however, ALJ Catanese did not find that Dr. Glassman's opinion held less persuasive value because it relied on Teresa G.'s self-reports.  Rather, the ALJ determined that the psychiatrist's examination findings did not provide sufficient support for his opinion.  The medical record supports that determination.  Therefore, Buck is distinguishable.

As to the second primary factor required to be addressed by the ALJ, the consistency of a medical opinion is the extent to which the opinion is consistent with evidence from other medical and nonmedical sources. See 20 C.F.R. § 404.1520c(c)(2) (describing consistency factor). ALJ Catanese reasonably found that Dr. Glassman's opinions were not consistent with "the frequently unremarkable findings in the overall evidence," (see Admin. R. 32, ECF No. 11), particularly those noted by Dr. Ning, Plaintiff's treating psychologist who saw Teresa G. on eight occasions between December 7, 2017, and November 14, 2018. For example, the ALJ correctly observed that Dr. Ning repeatedly indicated that Plaintiff had no reported or observed memory problems. (Id. at 31, citing id. at 307, 310, 321, 332, 348, 365, 383, 390.) He similarly pointed out that Dr. Ning's records consistently reported generally unremarkable findings, such as appropriate appearance, proper behavior, normal speech, coherent thought processes, and appropriate thought content. (Id. at 31-32, citing id. at 306-07, 309-10, 321, 332, 348, 365, 383, 389-90.)

The evidence cited by the ALJ supports his interpretation of Dr. Glassman's opinion. These findings undermined any determination that Plaintiff had significant mental limitations and countered Dr. Glassman's observations that Plaintiff was "mildly unkempt" and spoke with a "soft, whispery monotone." (See id. at 302.) Moreover, Dr. Ning's records also reflected that Plaintiff did not have any problems with concentrating on activities such as reading the newspaper or watching television, (see id. at 306, 382, 389), which contrasts with Dr. Glassman's finding of marked impairment in Plaintiff's capacity to maintain concentration, persistence, and pace. And although Teresa G. contends that Dr. Glassman's opinion was consistent with Dr. Ning's and Dr. Malone's opinions regarding her mental impairments, she does not challenge the ALJ's finding that those opinions had limited persuasive value. (See Pl.'s Mot. Attach. #1 Mem. P. &A. 8, ECF No. 15; Pl.'s Reply 6, ECF No. 20.)

"An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation" when evaluating the persuasiveness of a medical opinion. Ford, 950 F.3d at 1155 (citing Orn v. Astrue, 871 F.3d 625, 631 (9th Cir. 2007)). Viewing the record as a whole, the Court finds that the ALJ articulated legally sufficient reasons supported by substantial evidence in the record to substantiate his consideration of the opinions of Drs. Ning and Malone.

Substantial evidence is not a high bar. See Sandgathe 108 F.3d at 980 (defining substantial evidence as "more than a mere scintilla but less than a preponderance"). After considering the record as a whole, and evaluating "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," (see Garrison, 759 F.3d at 1009), the Court finds that substantial evidence supports the ALJ's evaluation of Dr. Glassman's opinion. ALJ Catanese reasonably explained his finding that Dr. Glassman's opinion was not persuasive, and he specifically addressed the supportability and consistency of the opinion as required under the regulations. Plaintiff has not demonstrated that the ALJ's decision contained legal error, or that it was not supported by substantial evidence. Accordingly, her motion for summary judgment is **DENIED**.

## IV.   CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment is **DENIED**.

This Order concludes the litigation in this matter. The Clerk shall close the file.

**IT IS SO ORDERED**.

Dated:  February 1, 2022

Hon. Ruben B. Brooks
United States Magistrate Judge